Our last case this morning is WS International LLC v. M. Simon Zook, Co. Mr. Linkmeyer? Yes, Your Honor. I'd like to reserve five minutes for rebuttal. Granted. Thank you. May it please the Court. My name is Gene Linkmeyer, and as you mentioned, I represent M. Simon Zook, Molasses Company, and Good Food, Inc. It's important to note that they are the appellant here and nominally named the defendant below, but they are also counterclaim plaintiffs. And the rights attendant to a plaintiff in this case are very important, and it's important to think of the plaintiff as Zook as well as WSI. Zook's claims concerned about $700,000 worth of accounts receivable, but also the $150,000 plus or minus regarding these repairs. And who did the repairs? Excuse me? Who paid for the repairs? Zook did. Zook did. And you'll see in the record from 52 to 72 the e-mail traffic back and forth. Again, a lien is essentially an agreement, and it has to be shown consent, either implied or explicit. So you see on the e-mail traffic that was in front of the district court that there was communication from Chicago saying, how's that beater that whips the material? And what about the motor? What about that rust? So you've got Chicago affirmatively communicating with Lancaster County and saying, do this. Get this done for me, for my machine, supposedly their machine. So you have actual knowledge and requests, and therein springs the lien. Now, the lien is only important here because it relates to the bond. But whether we find a lien exists or not, we still need to have a bond because either it comes from the lien or it comes from Rule 65. Now, let's talk about the ---- The court didn't give a reason for not imposing the bond. That's correct. They did not. And under Zambelli, you've got a requirement that if a court below is going to omit the requirement for a bond, they must make specific findings. So it's clear error there with regard to the bond. I thought there was a finding that Zook would suffer no harm. No. I do not see that in the record. I think that might have been an argument. But let's be clear here. You've got the nature of Zook's interests, again, go back to its status as a plaintiff. It has $700,000 wrapped up in invoices and $150,000 wrapped up in repairs. That's the harm. Once this machine disappears, there has to be, it evaporated, there has to be a bond that comes in and takes its place. That's the harm. The security is the harm, lack of security. Now, there was a race to the courthouse in this case. And the, quote, plaintiff, the WSI, won that race. They got the gold medal. Well, now they say they want to give it up because they want to be in Chicago instead. You can't do that because at the same time that they won that race, the other plaintiff, the counterclaim plaintiff, my clients, also were a plaintiff here and also averred and admitted venue was appropriate here in this district. Now, why is that race important? Well, the race is important, or factually speaking, it occurred because of the huge, three-quarters of millions of dollars in dispute. WSI knew that there was a suit coming, but they had to get their machine first. So they made a strategic choice. It was a smart move. It was a smart move. Get in on the Verpleven type action. Get in on the TRL. Let's grab that machine first, move it out to New Jersey, start making fondant with somebody else, and I'll worry about the invoice commercial litigation later. It's a smart move, but it has consequences. Venue, without doubt. I'm not up here, unlike our other cases today, I have no cases to distinguish on any of the issues, on the TRO bond issue, on a plaintiff moving for a transfer of venue, on the nature of a lien. I have no cases to distinguish. All of the points about which we are here today, that bring us today, are to be answered in the broad swath of precedent that exists already, either in the concept of the rules. Take a look at Rule 12H. If you don't raise venue in your response of pleading, it's waived. The counterclaim filed by my client was answered. Answered, not motion to dismiss. Answered, venue was admitted. So, you know, even the concept of the rules, the spirit of the cases, all of it comes back. On the TRO and the appealability, are we looking at a preliminary injunction rather than a TRO here? We are, Your Honor, we are. The TRO is obviously an ordering of affairs without a full complement of a record. The entire batch of evidence supporting the TRO is only a verified complaint. There was no testimony. There were no exhibits admitted into evidence, just that complaint. It's a pretty shaky foundation on which to stand. And let's assume we agree with you on venue and we send the case back to the Eastern District. What other remedy are you seeking here? Well, besides the venue, as to the TRO, we need to have either – we need to be able to say the bond should be this amount. Why isn't your Dane court just, you know, pay us the $700,000 you owe us? I mean, the district court made fairly extensive findings that the fondant wheel belonged to WS, et cetera, et cetera, and we haven't yet heard about the money, right? I mean, you haven't had your Dane court on that. So isn't that what remains to be done if we send the case back to Judge Stengel? I would submit that this court needs to inform the district court that it needs to make specific findings about the bond. Here's the problem with the TRO and why it's important to have it reversed as well. The applicants showing that the other side does not own the machine is not the same as proof that they do own the machine. Well, assume for a minute we disagree with you on that. Okay. Then where are we? We still need a bond. Why? Because security. The machine is being deployed in New Jersey somewhere. Yes. Economically viable pursuant to the wishes of its rightful owner. That may be the determination. If you're right on your injury, the economic injury to you, you still have a case going on whereby you can recover that. We do in the unjust enrichment context. We do, Your Honor. In Illinois as well? No. Well, I mean, sort of. But the cases that talk about the venue transfer, and particularly Judge Becker's opinion in Jumara, really talks about how the public and the private interest have to be weighed. And one of the private interests that can be weighed is the lack of the choice of forum, the lack of the choice of counsel, and the difficulty with which the evidence may be obtained. Now, in Illinois, that's a hike. It's not like we're talking about the Middle District to the Eastern District or the District of New Jersey. So we've got significant difficulties. It's inconvenient, but why not? Well, within the discretion of the district court, even without the forum selection. Well, because our system is based on the idea that when a litigant makes choices, they have to mean something. So plaintiffs should be penalized in this case for going into the Eastern District?  No, no. It's not a penalty. Look, the Sparr case out of the Second Circuit was very close to this situation. They said pretty clearly, look, the plaintiff gets to make a venue choice. They don't get to make it twice. They made their choice. It was a smart move. Grab that machine. They got it. It's a chart of notes. And let the litigation go on about who owes what, who for what. Okay, okay. But now the battle lines are drawn here. The evidence is here. The customers are here, et cetera, et cetera, et cetera. And so it's important for this to be the location. What about the confidentiality agreement, which I assume would be Illinois law would apply? No, I disagree. There is no confidentiality agreement. And it's very difficult, as I note in the brief, to really talk about it because there is none. And I don't mean that in a theoretical way. There was an offer. My client signed an offer. In Form 3? In Form 3, in the third version. And then there was a counteroffer in the fourth version that came back. So there was an offer. But WSI performed? No. They turned over information? No. In fact, that's why the Second Preliminary Injunction was denied. Because they were unable to prove the submission of any confidential material to Zook. And another aspect of that that's important to note is that not only is the – I apologize. I lost my train of thought watching the red light appear. Do you want to finish that thought? If you can find it. Yeah, right. Otherwise, we'll hear it on rebuttal. Yes. Okay.  See you in rebuttal. Thank you. Thank you. Mr. Brubaker? Thank you. Good morning. May it please the Court, my name is Christopher Moore Brubaker from Clark Hill, Fort Breed. I am attorney for Plaintiff Appellee, WS International, LLC. I just want to jump right into something. You asked Mr. Linkmeyer about the Court's findings of no harm. And Judge Stengel did specifically find that there was no harm, no impact, to Zook. This is from the Memorandum of Opinion at page 11, Joint Appendix, page 112. It was in conjunction with his ruling on the TRO. Yeah, the TRO ruling. It wasn't sort of obvious from the bond analysis that we see in many other cases. It was sort of buried within the TRO analysis, right? Well, I wouldn't call it buried because I think in this case, the bond and the lien are really the same issue. If you look at how this arose, we have a situation where a commercial relationship breaks down. My client, WSI, says, we want to get our machine back. We're coming to get it. The other side says, hey, wait a minute. We can't do it right then. We want to see proof of insurance and we want a mutually agreeable time. Oh, and by the way, you also owe us $650,000 for this product we made. My client says, we're not paying you. We don't owe you that money. Here's our proof of insurance. We'll pick it up on the 3rd. Some scheduling inconveniences, they have a new date on the 5th. Zook gets new counsel. They say, hey, wait, no, you can't get the machine. We have a lien. You haven't paid our invoices. Well, in their submission to the trial court, they've abandoned that position that they have a lien based on the invoices for the product. There's clearly no basis for a lien on that basis. All right, but let's assume for a minute we agree with you that the lien was not valid. The equipment is yours. Why was there not clear error, subject to our correction on mandamus jurisdiction, in the district court's decision to enforce a venue provision in a contract that never existed? I mean, it seems clear to me that there was no contract. They sent an offer in Form 3. You sent a counteroffer in Form 4. There was no writing that was signed by Zook chargeable against them. I would submit that in Mr. Linkmeyer's own language, litigants make decisions they have to live with the consequences. They made a tactical decision in response to the motion to amend and attach a document, which they now claim is not binding. But rather than challenge the amendment on that basis and the record that had already been established, they say, fine, go ahead, make that amendment. We want more discovery. Well, they had a Rule 11 obligation to allow you to amend your complaint. I don't see why. I don't understand how allowing you or acquiescing in your filing of an amended complaint in any way binds them to the existence of a contract that, as far as I can tell, didn't exist. They didn't admit. You didn't plead, you know, there's this contract. There's no admission on their part, et cetera. All they did was routinely allow you to file an amended complaint, as I think under Rule 11 they had to. Well, I'm not – I don't understand Rule 11 to prohibit a challenge to an amended complaint, amended pleading for cause. And clearly they have caused the challenge, the ability to amend this pleading on a document that they say had already been established in the record as not being binding on the parties. There's no indication from them at that time that they're going to challenge this in any way. They don't even say, by the way, you know we're going to challenge this down the road. They challenged it in their next pleading, did they not? They challenged it after they lost. And the error was – Well, did they argue in court, in the district court? Is there anything in the record to indicate that they conceded the point that Form 3 was a valid contract? Or Form 4 was a valid contract, I should say? I am not aware of anything in the record where that was specifically addressed. I know that they made the decision to proceed as they did, and I think the record that was in front of Judge Stengel when he made his decision supports that decision. I think that's the issue. Did you turn over confidential material? I don't know if confidential material was turned over. I was not – this firm was not involved with the underlying case, and I'm not familiar with the interplay of the issues at the trial level. But I do know that they did obviously were willing to be bound by a document that provided for venue in Illinois. Now, whether – and I think that undercuts their argument of harm and inconvenience. They were obviously at one point willing to be bound by that, even if that was never actually fully became the operative document. I think it undercuts the issue in terms of they're trying to say that there's a harm here and that they'll be prejudiced by this. The fact of the matter is one party or the other is going to be traveling for this litigation. It's going to be in somebody's backyard or the other party's backyard. And based on the record that was before him, Judge Stengel said it should go to Illinois. And then they come in and raise all these issues that they could have and should have raised, frankly, in the first instance. What did – what was left to be decided in Judge Stengel's view? And what was left to be decided in Illinois should the venue transfer take place? What's left is the underlying commercial dispute about the unpaid invoices for product, approximately $650,000. That's what's still outstanding in that issue. Now, Zook filed a motion for reconsideration, correct? They did. And the judge didn't seem to address the merits of that. The judge just defaulted back to the decision that Zook had failed to oppose your request to file a second amended complaint, correct? Well, he addressed the – he did, yes. He addressed the standard, which is clear error, and said that on the record I did not make a clear error. So as I – Why did you sue here instead of in Illinois initially? The equipment was here. You couldn't have sued in Illinois? Well, I think that would be highly unusual. I think the idea is to move where the equipment is. I mean, that was truly what was at issue early on with the TRO slash preliminary injunction is getting that machine. We certainly weren't making a claim for the unpaid invoices. That's an issue that they rightfully raised, but that goes into the underlying, you know, agreement and the posture between the parties and what was or was not agreed to in terms of venue. The immediate issue that was moved on was getting possession of the machine, which they were denying. If the case remains in Illinois, is it your contention that you have the ability to seek another preliminary injunction? That my client would have? Yes. I mean, as I understand one of Zook's arguments, they're claiming that you want another bite at the apple, having been denied in your most recent effort. I don't – I think the posture of the case would be pretty much the same in either court. But the – in terms of this – another preliminary injunction, I believe you're referring to I think the motion to vacate that was denied as moot. I don't see that as being a basis for the move. I think that the move is based on their willingness, their agreement to be subject to venue for the dispute in Illinois. I guess let me try to ask it more simply. What's left to litigate in Illinois? What's the next step in the Illinois litigation if it stays there? If this matter stays in litigation, it's back to where it was in terms of dealing with the underlying complaint regarding the unpaid invoices and whether there's a basis to collect on those. So the only thing left to adjudicate in Illinois is whether you owe them $650,000? I believe so at this point, yes, Your Honor. I would just conclude by stating that appellants have not carried their burden on appeal. Judge Stengel made factual findings that support the relief that was granted to WSI. He specifically found that WSI owned the machine. In that regard, that reminds me of a point I wanted to make. Zook, in opposing the TRO, did not argue that WSI did not own the machine. It's a little baffling to me why they are now making that an issue. There is a verified complaint stating that we own the machine. There is their admission that they do not own the machine. If you look at all the correspondence both between counsel prior to coming to court and the emails that are part of the record for the court below, there's nothing to indicate somebody other than WSI owns the machine. Their claim of a lien doesn't make any sense. It presupposes that you own the machine. Exactly. We understand that. So he made the finding of ownership. He made the finding that the party's agreement did not offer or permit the equipment to serve as collateral for any disputed claims. The equipment was solely there to allow Zook to be able to generate revenue, to generate product that we would purchase, and that's what happened. Over $2.4 million of product was purchased with the remaining $650,000 of product in dispute. That is what the party's agreement was. And he did not find there to be a basis for a lien. And I will submit to you that the record does not contain evidence to suggest that WSI agreed to pay for repairs to this machine that Zook was making. There is nothing to say that WSI agrees to pay. There is no invoice. There is no record of any request for a payment for repairs prior to the hearing. There is correspondence. I think the last letter from counsel on May 5th does, in the end, and say, oh, by the way, it was for repairs. It doesn't put a figure on those repairs. The first request for payment for repairs is in response to the court action in front of Judge Stengel, and it's really an attempt to create, as he said, security, to create an advantage, to get our client to have to pay up front over disputed claims. It's that simple. And on the transfer, again, we submit that the motion for reconsideration, it's the same standard on the motion for reconsideration as it is here on the writ of mandamus, that of clear error. And we have to look at the record at the time he made the decision, and he did not make a clear error based on the record at that time. So if there are no further questions, I would rest. Thank you, Mr. Brubaker. Mr. Linkmeyer, rebuttal. Thank you, Your Honors. Here's what's left to litigate besides the $650 plus interest and the $150 repair, which is disputed. There are declaratory judgment actions regarding whether or not my client has the right to engage in the fondant business and the caramel business. There's declaratory judgment about the existence or nonexistence of the confidentiality agreement, and there is a declaratory judgment seeking a determination that no confidential information was ever exchanged, was ever provided. So there are a variety of – Does it make any difference what law would be applied to these matters? Well, I want to say that I have not specifically looked at Illinois law on those issues, and I apologize. Certainly in Pennsylvania, it's interesting because the machine was here. It's as if you have to assume that parties to a commercial relationship know what they're doing. You place a half-a-million-dollar machine in Lancaster County, you have to assume that you're going to use Pennsylvania law when you want to get it back. I mean, it's something that you order your affairs with when you make that decision. No, but on the other items of declaratory relief and the confidentiality, are we under Illinois law? No, we're under Pennsylvania law. I can't talk to the comparison of the two, but it's pretty clear to me that it's under Pennsylvania law. And when we talk about confidential information, interestingly, as a matter of public record, there is in the Library of Congress, searchable on Google, every recipe from WSI. Why? They published a book for the purpose of providing to the public for high-quality caramel and fondant, and it was published in, I believe, 1919. You know, the notion of confidential information here was an add-on to try to get more here. It'll be litigated, and I'm confident that it will be determined that there is none at issue here. Certainly, there are no customers that it would apply to, even if Form 4 were to come into play. Form 4 still doesn't have a list of customers. So even if in the netherworld there was confidential information, it doesn't apply to anybody. Now, I did want to express my own deep personal shock at my offer to expedite litigation in the district court being used against my client as an admission of some sort. I can't believe that the rules would be read in such a way as to penalize me and my client for attempting to provide that sort of consent. It would almost be as if, while we're here in this court, we have consent from WSI to treat the notice of appeal as a petition for a writ of mandamus. Now, the court has discretion to do that on its own. We don't need to have consent, nor could we manufacture jurisdiction by that. But take for a moment that consent. It would be as if your honors would then say, well, they agree to everything that Zook wants. We have to have an ability in litigation to have consents to move litigation and disputes to conclusion, get over the things that don't matter, and get to the things that do. Your argument that procedurally acquiescing to the filing of a complaint sheds no light whatsoever regarding the substantive averments of that complaint, is that a fair understanding of your position? It is, it is, Your Honor. And why did the district court find otherwise? I mean, how? What exactly, refresh my recollection, exactly how the district court came to the opposite conclusion? Two things, Your Honor. The district court, in the opinion on the reconsideration, raised two things. One, they said that the defendant signed the contract. And second, they said that counsel did not object. I don't know what else I could have done to object further about the venue, about the venue matter. We denied, we opposed it in the motion to vet transfer. We admitted their averment that this was the proper venue. And, in fact, that proposed pleading that was meant, that was to be submitted, actually averred causes of action under the Pennsylvania Uniform Trade Secrets Act, PUTSA. Not Illinois' version of it, but Pennsylvania's specifically. And it averred venue properly lays here in this Eastern District. So even if we take Judge Stengel's actions at face value, even agreeing to that motion to amend does not place the client in the position of agreeing to venue in Illinois. But I thought the district court's view was by allowing, by acquiescing to the amended complaint, you admitted the efficacy of the contract appended thereto. Was that it? I think that's the best way to look at it in a rational way.  It's inaccurate in your view because that contract was never signed by your client. Among other reasons, yes. Yes, absolutely. If I may just take one moment to circle back to another question that came up. The standard of review when we come to this TRO. The facts are not in dispute. This is one of those strange cases where we all agree what the facts are. The facts are all about economic damage. And there's no case anywhere that I could ever have found, and none is cited even in that portion of the district court's opinion, which discusses how economic damages like these, grave though they may be, would justify the irreparable harm. In some cases, if you're going to put a company into bankruptcy or really drive them out of business in one form or another, you may have irreparable harm. Right. I understand. Thank you, Your Honors, for your time, and thank you to your staffs for your attention to this matter. It's very important to us. Thank you. We appreciate the assistance of counsel from both sides. The court will take the matter under advisement.